**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENNET R. DAVIS,<br><br>          Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Civil Action No.: 2:12-cv-05908-(CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

### I.   INTRODUCTION

Gennet R. Davis ("Claimant") seeks review of the final determination by the Commissioner of the Social Security Administration ("Commissioner") denying Claimant disability benefits under the Social Security Act. Claimant asserts two separate grounds for vacating the Commissioner's decision. First, Claimant argues that the Administrative Law Judge ("ALJ") who presided over the administrative hearings was biased and that Claimant was, therefore, denied her right to have an unbiased adjudicator hear her claim and develop the administrative record. She seeks an Order of Recusal of the ALJ. Second, Claimant argues that the Commissioner's denial of her application for disability insurance benefits is not supported by substantial evidence. This motion has been decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, this Court affirms the Commissioner's decision.

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## II. FACTS AND PROCEDURAL HISTORY

Claimant applied for Title XVI supplemental security income ("SSI") benefits in November 2003 (R: 48-51)[2], alleging disability from degenerative disc disease (R: 48). She has little past work history, other than two months of laundry work at a nursing home, in December 2000 and January 2001 (R: 95). Claimant's application was denied initially and upon reconsideration (R: 22, 23). Claimant requested a hearing before an ALJ (R: 21). At the hearing, Claimant appeared pro se, and the ALJ permitted her to seek counsel (R: 187-92).

In February 2007, another hearing was held, which Claimant attended with her attorney (R: 193-220). At the hearing, Claimant testified that she cleans, cooks, and performs household chores, while her children are at school (R: 205). She explained that she had gained over a hundred pounds in the past three years (R: 206). Regarding her educational history, Claimant at first testified that she did not graduate from high school because her mother could not afford to rent the required cap and gown (R: 209). She later testified that she does not recall whether she passed her senior year exams and said that she was in special education class for learning disabilities (R: 210). Due to this testimony, at the hearing, Claimant's attorney requested a psychological examination with I.Q. testing to determine the extent of Claimant's literacy (R: 217).

On March 21, 2007, ALJ Donna Krappa issued a decision denying Claimant's application (R: 10-20). The ALJ decided, inter alia, that Claimant had the severe impairments of degenerative disc disease of the spine, obesity, and hypertension (R: 15) but that her impairments, or combination of impairments, did not equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). Despite finding exertional and non-exertional

---

[2]  "R" refers to the certified record of the administrative proceedings.

impairments, the ALJ also determined that Claimant has the residual functional capacity ("RFC") to perform a full range of medium work activity (R: 16). The Appeals Council denied Claimant's request for review (R: 5-7), and Claimant filed an action in the U.S. District Court (Hochberg, J.), which remanded the action for further proceedings (R: 256-57). Consequently, the Appeals Council reversed and directed that, upon remand, the Claimant would be given the opportunity to submit additional evidence concerning her impairments and directed that the ALJ obtain evidence from a vocational expert (R: 242, 266-67).

On November 4, 2010, the ALJ held a supplemental hearing attended by Claimant and her attorney (R: 309-49). At this hearing, a vocational expert testified (R: 341-47). Significantly, after the ALJ read into the record Claimant's testimony from the prior hearing, where Claimant stated that she has difficulty reading the newspaper other than the large headlines despite having completed at least her junior year of high school, there was also colloquy between Claimant's attorney and the ALJ. During this colloquy, the ALJ stated that claimants often respond to questions more truthfully when they first apply for Social Security benefits, before benefits are initially denied. The ALJ explained that some attorneys may counsel their clients to misrepresent their command of the English language (R: 318-21). When Claimant's counsel asked ALJ Krappa, "Can you make it clear for the record that, that was not me," ALJ Krappa responded, "Absolutely not you." (R: 321). At no point did the Claimant or her attorney ask that the ALJ recuse herself after making these comments (R: 318-21).

After the hearing, the ALJ did subpoena Claimant's high school records (R: 298-308), pursuant to her attorney's request. The records showed that Claimant was in special education classes, had borderline passing grades, and was frequently absent from school (R: 304-308), with

3

one teacher commenting that Claimant "is absent too much to do well in her work." (R: 306).

On March 23, 2011, the ALJ issued a decision, finding that Claimant is not disabled (R: 242-52). Claimant again requested that the Appeals Council review the ALJ's decision, stating the reason for the request was because she still is unable to work due to pain when she stands or sits for too long (R: 234). Notably, in Claimant's brief to the Appeals Council, she reiterated a request that the ALJ subpoena additional information from her high school, including past psychological evaluations, and requested that the Appeals Council "remand this matter to ALJ Krappa with instructions to subpoena those documents from the Elizabeth Board of Education." (R: 226). The Appeals Council declined jurisdiction on July 12, 2012 (R: 221-23). This action followed.

## III.  LEGAL STANDARD

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the

4

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 Fed. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the Social Security Act, in order to be eligible for benefits, a claimant must show that she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v.

Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much RFC the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation continues through each step unless it is determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV. DISCUSSION

### A. Claimant Waived Her Claim That The ALJ Was Biased

Claimants in Social Security cases have the right to a fair hearing, which includes having an unbiased adjudicator evaluate the evidence. See Hummel v. Heckler, 736 F.2d 91, 93 (3d Cir. 1984). The Third Circuit has recognized that because these administrative proceedings lack many of the procedural safeguards normally available in other judicial matters, ALJs in Social Security hearings must maintain a high degree of impartiality. See id. Nevertheless, the district court may not play a fact-finding role in Social Security cases, including determining whether an ALJ actually harbored a subjective bias against a claimant. See id.

Rather, the district court may only review the Commissioner's decision on a bias claim. Id. at 94; see also Caldwell v. Barnhart, 85 Fed. App'x 811, 813 (3d Cir. 2003) (noting that the Third Circuit has "interpreted the statute [42 U.S.C. § 405(g)] to mean that although a district court may exercise a restricted review of the Commissioner's findings, it has no fact-finding role in Social Security cases"). Accordingly, a district court's review of the Commissioner's findings on a bias claim necessitates that that the bias claim was raised below. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (explaining "[t]he claimant must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw. The regulations provide that if the ALJ does not withdraw, the claimant may present objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another ALJ.") (internal citations omitted)).

The Social Security Administration has, by regulation, promulgated a means for raising a claim of bias before the agency. According to the regulation, a claimant must present her claim of

7

bias to the Appeals Council and provide a rationale justifying a request for a revised hearing decision or a new hearing. See 20 C.F.R. §§ 404.940, 416.1440. In accordance with the district court's jurisdiction to review Social Security cases, the Third Circuit has explained that this regulation "apparently contemplates that factfinding with respect to claims of bias take[s] place at the agency level[,]" not the district court level. See Hummel, 736 F.2d at 94. Thus, to be granted a remand by the district court, a claimant must have raised the bias claim as soon as practicable— at the agency level. Id.

Here, the record reveals that Claimant failed to raise her bias claim at any administrative level, despite the fact that the regulations provide for the disqualification of prejudiced or partial ALJs. See 20 C.F.R. § 416.1440 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity."). In fact, the record demonstrates that the first time Claimant raised an allegation or claim of bias was before this Court. Claimant did not seek recusal of the ALJ at the time of the hearing and only raised her bias challenge at the District Court level, through briefing. In Ventura, 55 F.3d at 902, the Third Circuit found that the claimant had preserved his bias challenge by requesting that the ALJ disqualify himself at the hearing and by later seeking Appeals Council review of the ALJ's refusal to recuse himself. By contrast, in this case, Claimant never asked ALJ Krappa to disqualify herself. Moreover, when Claimant sought review of ALJ Krappa's decision before the Appeals Council, she asked that the case be remanded to the same ALJ. Specifically, Claimant requested the Appeals Council to "remand this matter to ALJ Krappa with instructions to subpoena those [additional] documents from the Elizabeth Board of Education." (R: 226). Because Claimant raised the bias challenge for the first time before this Court, she is deemed to have waived her bias claim.

Nonetheless, the supplemental hearing transcript does not reveal antagonism rising to the level of bias against Claimant such that ALJ Krappa should have recused herself. Thus, even if Claimant's bias claim had been preserved, there is no evidence of bias against Claimant or Claimant's counsel in this case.

### B. The ALJ Acted Properly Within Her Discretion In Denying Claimant's Request For A Psychological Examination

Further, to the extent that the Claimant appears to argue that the ALJ erred in failing to order a psychological examination with I.Q. testing, the Court finds that the ALJ properly acted within her discretion. See 20 C.F.R. § 416.919 ("The decision to purchase a consultative examination will be made on an individual case basis in accordance with the provisions of § 416.919a through § 416.919f."); 20 C.F.R. § 416.919a ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). Here, Claimant did not apply for benefits on the basis of a mental impairment as a source of her disability.[3] Nonetheless, the ALJ subpoenaed "all" records from Claimant's high school and ultimately determined that Claimant did not present sufficient evidence of a mental impairment to raise a claim that required further examination. Thus, the ALJ was not required to send Claimant for a psychological examination with I.Q. testing.

### C. The ALJ's Decision Was Supported By Substantial Evidence

Claimant also argues that the ALJ failed to compare the combined effect of all of her impairments—particularly, the effect of her obesity on her hypertension or degenerative disc

---

[3] Claimant applied for Title XVI SSI benefits in November 2003 (R: 48-51), alleging disability from degenerative disc disease (R: 48). She later supplemented her disability report with arthritis in her right arm, muscle spasms in her lower back, headaches, chest pain and shortness of breath (R: 58).

9

disease—with one or more of the Commissioner's listings (R: 20), as required by 20 CFR § 404.1526. That regulation mandates that if a claimant has:

> a combination of impairments, [none] of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 § CFR 404.1526. Accordingly, Claimant argues that had the ALJ fully considered the effects of her obesity on her other severe impairments, this consideration would have mandated a finding of disability. See Claimant's Br. at 27-34.

In Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009), the ALJ found obesity to be one of the claimant's severe impairments but did not take into consideration whether her obesity combined with her asthma, diabetes, arthritis, back pain, and hypertension could impact her workplace performance. The Third Circuit remanded, as it was unable to conclude that the claimant's "obesity had no impact, alone or in combination with her other impairments, on her workplace performance." Id. at 504. Rather, the court noted that "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. See Clifford, 227 F.3d at 873 (noting significant relationship between obesity and severe arthritis of the knees)." Id. In Diaz, the Third Circuit stated that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Id.

By contrast, in Rutherford v. Barnhart, 399 F.3d 546, 546 (3d Cir. 2005), neither the claimant nor the ALJ mentioned obesity as a condition that contributed to the claimant's inability to work, notwithstanding that her height was 5'2" and her weight was 245 pounds. In Rutherford,

the claimant argued that the ALJ failed to consider her weight throughout the disability analysis, as required by Social Security Ruling ("SSR") 00–3p. Id. at 552. The Third Circuit concluded that remand was not required "because it would not affect the outcome of the case." Id. at 553. Significantly, the claimant did not specify how consideration of her obesity would affect the ALJ's five-step analysis, "beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers." Id.

Here, unlike in Rutherford, the ALJ determined that Claimant's obesity constituted a severe impairment (R: 247). The ALJ noted that the medical records show that Claimant has a history of obesity, with her height at 5'7" and weight reaching up to 287 pounds (R: 249). Claimant asserts that the ALJ did not consider how her obesity would affect her workplace performance—specifically, her ability to perform the exertional demands of medium work. See Claimant's Br. at 27. But, the ALJ did take this into consideration. Specifically, the ALJ stated that "while the claimant's weight would preclude very heavy or heavy work, she retains the ability to perform the demands of medium work." (R: 247). The ALJ also noted that the examining physicians were aware of Claimant's obvious obesity (see Rutherford, 399 F.3d at 553), yet concluded that Claimant had no specific physical functional limitations (R: 249). For example, the ALJ referenced the results of Claimant's physical consultative examination, which demonstrated that Claimant "was able to squat, toe and heel walk; her heart had a regular rhythm; she had full lumbar flexion, extension and rotation; and she had full sensation, reflexes and muscle strength." (R: 249). Another physical consultative examination found that Claimant "had extremely mild lumbar range of motion limitations" (R: 249). Claimant stated to her examining physicians that she is independent in activities of daily living (R: 249). The ALJ also considered that the chiropractic

11

notes revealed that, despite her increasing weight, Claimant showed a 25% to 50% improvement in spinal functioning and lumbar-related pain (R: 250). Accordingly, the ALJ did not fail to appropriately consider Claimant's obesity, and the decision was supported by substantial evidence.

## V. **CONCLUSION**

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate order accompanies this Opinion.

DATED: January 28, 2016

                                                     **CLAIRE C. CECCHI, U.S.D.J.**